IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL LAVERNE MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV963 |
| | ) | |
| SHERIFF SAM PAGE, | ) | |
| OFFICER LUCAS, | ) | |
| OFFICER KENNTH, | ) | |
| OFFICER THOMAS, and | ) | |
| OFFICER WAYNE, | ) | |
| in their individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Laverne Murphy ("Murphy"), proceeding *pro se*, filed this action against Sheriff Sam Page and Officers Lucas, Kenneth, Thomas, and Wayne ("Defendants") alleging constitutional violations and torts committed when Murphy was being held at the Rockingham County Detention Center ("RCDC").[1] (*See generally* Complaint ("Compl."), Docket Entry 2.) This matter is now before the Court on Defendants' Motion for Summary Judgment (Docket Entry 28) and Motion to Seal (Docket Entry 30). Murphy has not

---

[1] Defendants provide evidence that "[d]uring Murphy's stay . . . [RCDC] did not employ any detention officers with the last names Kenneth or Wayne" and that "[i]t is not RCDC policy for detention officers to provide their first names to inmates." (Docket Entry 29-1 ¶ 15.) Defendants appear to argue that, for this reason, Murphy's claims against Officers Kenneth and Wayne should be dismissed. (*See* Docket Entry 29 at 7–8.) Defendants also point out that no Summons was issued to Officer Thomas. (*Id.* at 2 n.1.) Because the undersigned concludes that Murphy has not created a genuine issue of material fact as to any Defendants, the Court need not address these issues.

responded to Defendants' motions, and the matters are ripe for disposition. For the reasons stated herein, the Court orders that the Motion to Seal be granted in part and denied in part. Furthermore, the undersigned recommends that the Motion for Summary Judgment be granted and the case be dismissed with prejudice.

I. BACKGROUND

The facts of this case come nearly exclusively from two sources: Murphy's Complaint and the affidavit of Lt. Orin Spencer Stultz, an Assistant Jail Administrator, submitted in support of Defendants' summary judgment motion. (*See* Affidavit of Lt. Orin Spencer Stultz, Docket Entry 29-1). Lt. Stultz states that Murphy was admitted to RCDC on April 7, 2021, after being arrested and charged with fleeing to elude arrest, assault with a deadly weapon, and possession of a firearm by a felon. (*Id.* ¶¶ 1–3.) These charges resulted from Murphy fleeing from police officers and firing a gun at them. (*Id.* ¶ 2.)

After Murphy's arrest and detention, he was "placed on special watch, otherwise known as suicide watch, based upon the nature of his charges and high bond amount" of 2.5 million dollars. (*Id.* ¶¶ 2–3.) In his Complaint, Murphy alleges that while on special watch, he was verbally harassed by the detention center staff, denied grievance forms, denied eating utensils, and denied contact with mental health services to explain to him why he was on special watch. (Compl. at 9–10[2].) His factual allegations are recounted in full below:

> 1. On March 5, 2021[3], Plaintiff was booked into the Rockham [*sic*] County Jail and placed on suicide watch despite

---

[2] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

[3] Defendants suggest that Murphy is mistaken about the date he entered RCDC, which was April 7, 2021. (Docket Entry 29 at 2.)

2

not having shown or expressed any suicidal ideations or a desire to harm himself. Initially, Plaintiff was placed in an "observation" cell but was moved to a regular cell, albeit in a padded apron instead of regulation inmate attire and confined to quarters, 24-hours a day.

2. That morning, during the breakfast meal, Officer Lucas came to Plaintiff's cell door and handed Plaintiff a meal tray. Plaintiff asked Officer Lucas why he was on suicide watch since he wasn't suicidal. Officer Lucas told Plaintiff to "…deal with it." When Plaintiff then requested a spoon or other eating utensil so that he could eat his meal, Officer Lucas told Plaintiff that he wasn't entitled to one. Plaintiff asked Officer Lucas to explain how he was supposed to eat his meal without an eating utensil. Officer Lucas told Plaintiff to "…use your hands."

3. Later that afternoon at approximately 12:08 p.m., Officer Lucas returned to Plaintiff's cell door with Plaintiff's lunch tray. Plaintiff told Officer Lucas that he wanted to see someone from mental health so he could get a clear answer as to why he was being held, without cause, on suicide watch. Officer Lucas responded that he wasn't going to call for anyone to see Plaintiff and told him that he should have thought twice before trying to kill two government officers. When Plaintiff requested a grievance form and a spoon to eat with, Officer Lucas told Plaintiff that he should "…eat with [his][4] hands like a dog."

4. In the evening, Officer Thomas came to Plaintiff's cell door with Plaintiff's dinner tray. Plaintiff recounted to Officer Thomas how Officer Lucas had refused to call for someone from mental health services to come see him or even to provide Plaintiff with a grievance form or even an eating utensil so that he could eat his meals; Officer Thomas then handed Plaintiff his tray <u>without</u> an utensil, telling Plaintiff "Monkey, eat with your hands like you [sic][5] been doing." Officer Thomas then locked Plaintiff's cell door and ignored Plaintiff's repeated requests for a grievance form.

5. On March 6, 2021, Officer Kenneth came to Plaintiff's cell door with Plaintiff's breakfast tray. Again, Plaintiff was refused an eating utensil. When Plaintiff told Officer Kenneth that he needed a pencil and the appropriate forms to file an administrative grievance regarding his continued confinement in

---

[4] Alteration in original.
[5] Alteration in original.

3

suicide watch and harassment by staff, Officer Kenneth simply laughed and told Plaintiff "Good luck with that."

6. That same day at approximately 12:30 p.m., Officer Kenneth returned to Plaintiff's cell door, this time with Plaintiff's lunch tray. When Plaintiff again asked for an eating utensil and grievance forms, Officer Kenneth told Plaintiff to "…quit whining" and that no one was going to give Plaintiff anything.

7. Later that evening, Officer Wayne came to Plaintiff's cell door with Plaintiff's dinner tray. When Plaintiff asked for grievance forms and for an eating utensil, Officer Wayne replied that Sheriff Same Page was very much aware of the allegations against Plaintiff and had specifically instructed [illegible] staff to keep Plaintiff in suicide watch and to not provide Plaintiff with grievance forms or an eating utensil.

8. The next morning on March 8, 2023 [*sic*], Officer Lucas came to Plaintiff's cell door with Plaintiff's breakfast tray. Again, Plaintiff requested a grievance form and an eating utensil. Officer Lucas then told Plaintiff to "…shut up; you're not getting nothing [sic][6]."

9. Plaintiff continued to be confined in suicide watch, denied grievance forms, denied an eating utensil, and repeatedly harassed by staff until approximately October 5, 2021.

(*Id.* at 7–9.)

Murphy claims that Sheriff Page and Officers Lucas, Kenneth, Thomas, and Wayne violated his rights under the Eighth Amendment including through deliberate indifference to his medical needs. (*Id.* at 9–10.) Murphy also claims that Defendants violated his First Amendment rights by retaliating against his attempts to file grievances. (*Id.* at 9.) Additionally, Murphy claims that Defendants' behavior constituted false imprisonment and intentional

---

[6] Alteration in original.

infliction of emotional distress. (*Id.* at 3, 9.) He has sued all Defendants in their individual and official capacities and seeks monetary damages from each. (*Id.* at 2–4, 6.)

Lt. Stultz's affidavit contradicts Murphy's Complaint in several important ways. First, contrary to Murphy's allegation that he was "confined to quarters, 24-hours a day" (*id.* at 7), Lt. Stultz states that Murphy "was not kept in seclusion but had interaction with other inmates and staff. He had access to regular exercise periods available to general population[.]" (Stultz Aff. ¶ 9.) Second, contrary to Murphy's statements that he was denied access to mental health services (*see* Compl. at 7–8), Lt. Stultz states that

> medical services for RCDC were provided by Southern Health Partners (SHP) and mental health services were provided by Daymark. . . . Murphy saw SHP personnel on April 8, 2021, at which time he mentioned how stressed he was over the high bond amount. . . . Murphy was seen each day by SHP personnel until he was evaluated by Daymark on April 14, 2021. After that visit and another visit with Daymark on April 20, 2021, it was recommended that Murphy remain on special watch. On May 21, 2921, Murphy was evaluated by Daymark and was recommended to be released to general population.

(Stultz Aff. ¶¶ 5–7; *see generally* Ex. A to Stultz Aff., Docket Entry 32 (medical records from SHP and Daymark documenting the services provided to Murphy described above).) Relatedly, Lt. Stultz states that Murphy refused to leave the special watch cell after it was recommended that he be released to the general population because he would receive less exercise time in his new location. (Stultz Aff. ¶ 8.) According to Lt. Stultz, this is the reason that Murphy remained in the special watch cell until he was transferred to prison on October

5

5, 2021. (*Id.*) Additionally, Defendants deny that they harassed or otherwise harmed Murphy. (Docket Entry 17 at 3.)

Lt. Stultz also provided information about RCDC's policies related to Murphy's allegations. RCDC does not provide eating utensils to detainees unless a meal requires them. (Stultz Aff. ¶ 9.) To file a grievance, a detainee must inform a detention officer, who enters the grievance into a computer terminal. (*Id.* ¶ 11.) RCDC then responds, and the detention officer provides the detainee with a copy. (*Id.*) According to Lt. Stultz, "Murphy did not file a grievance about his conditions" while at RCDC. (*Id.*)

Defendants filed their motion for summary judgment on March 28, 2025. (Docket Entry 28.) The Court then sent Murphy a "Roseboro Letter"[7] at his address on file, informing him that a dispositive motion had been filed in the instant action and advising him of the consequences of failing to respond. (Docket Entry 33.) Murphy did not file a response.

## II. MOTION FOR SUMMARY JUDGMENT

The undersigned recommends the Court grant Defendants' Motion for Summary Judgment. (Docket Entry 28.) At the outset, the undersigned notes that because Murphy has failed to file a timely response, Defendants' Motion for Summary Judgment could be granted pursuant to Local Rule 7.3(k). Where a party fails to file a timely response, a motion will be "considered and decided as an uncontested motion, and ordinarily will be granted without further notice." Local Rule 7.3(k); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (Auld, M.J.) (analyzing this Court's Local

---

[7] A notice sent pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) advises *pro se* plaintiffs of their right to file responses to dispositive motions filed by defendants.

6

Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).[8]

Alternatively, Defendants' Motion for Summary Judgment should be granted because Murphy has not presented a genuine issue of material fact suitable for trial. Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997) (per curiam). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met their burden, the non-moving party must then affirmatively demonstrate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). There is no issue for trial unless there is sufficient evidence favoring the non-moving party such that a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810,

---

[8] Additionally, this action could be dismissed—albeit without prejudice—due to Murphy's failure to notify the Court of his current mailing address in a timely manner. As a *pro se* litigant, Murphy must "keep the Court and opposing parties advised as to his . . . current address." M.D.N.C. L.R. 11.1(b); *see also Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988) ("A party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address."). The undersigned's previous Order (Docket Entry 23) was sent to Murphy and returned by the U.S. Postal Service marked as "return to sender," "no such street," and "unable to forward." (Docket Entry 24.) The Local Rules provide that "[i]f mail directed to a *pro se* plaintiff from the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within sixty-three (63) days thereafter of a current address," the Court may dismiss without prejudice the action for failure to prosecute. M.D.N.C. L.R. 11.1(b). Here, over nine months have passed since the U.S. Postal Service returned the undersigned's previous order. (*See* Docket Entry 24.)

7

817 (4th Cir. 1995). Thus, the moving party can bear their burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish their claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

When ruling on a motion for summary judgment, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Anderson*, 477 U.S. at 253–55. However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248–49.

### A. Fourteenth Amendment Claims

Murphy claims that Defendants violated his rights under the Eighth Amendment's prohibition on cruel and unusual punishment. (Compl. at 3, 9–10.) However, a "pretrial detainee . . . cannot be subject to any form of 'punishment'"; it is therefore the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment, that governs this case. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quotation modified)). "The Fourteenth Amendment Due Process Clause protects pretrial detainees from governmental action that is not rationally related to a legitimate nonpunitive governmental purpose or that is excessive in relation to that purpose." *Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023) (citation modified), *cert. denied*, 144 S. Ct. 2631

8

(2024); *accord. King v. Dickerson*, No. 1:23-CV-00730, 2025 WL 2306235, at *5 (M.D.N.C. Aug. 11, 2025) (Peake, M.J.), *report and recommendation adopted*, No. 1:23-CV-00730 (M.D.N.C. Sep. 11, 2025) (Schroeder, J.).

Regardless, even when the record is viewed in the light most favorable to Murphy, this case involves no genuine issue of material fact regarding a due process violation stemming from denial of medical care, placement on special watch, denial of utensils, denial of grievance forms, or verbal harassment. Murphy's only evidence for these harms is his allegations in the Complaint, which are insufficient to contest the contradictory evidence from the affidavit and medical records filed by Defendant. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (finding the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions"). And to the degree that some of Murphy's allegations are true, they do not rise to the level of a constitutional violation.

First, no reasonable jury could find that Defendants violated Murphy's due process rights by denying him access to medical care because the record shows that RCDC staff did not withhold medical care from Murphy. For a pretrial detainee's claim of deliberate indifference to medical needs to succeed, a defendant must have "acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."[9] *See Short*, 87 F.4th at 611. Here, Murphy alleges that Defendants failed to act by

---

[9] Defendants argue that Murphy has failed to meet the Eighth Amendment's standard for deliberate indifference to serious needs, which, they say, includes objective and subjective elements. (Docket Entry 8, 11–13.) This is not the right approach for the current case. As explained above, the Fourteenth Amendment, not the Eighth Amendment, controls here. And recently, the Fourth Circuit ruled that a claim for deliberate indifference to medical needs

9

Case 1:23-cv-00963-CCE-JLW    Document 34    Filed 11/07/25    Page 9 of 20

denying him access to mental health services to explain why he was on special watch. (*See* Compl. at 7–10.) But Defendants have produced an affidavit and medical records showing that Murphy repeatedly received mental and physical health services. (Stultz Aff. ¶¶ 5–7; *see generally* Ex. A to Stultz Aff.) Murphy's only evidence to the contrary is his unsupported allegations in the Complaint, which are insufficient to contest Defendants' evidence at this stage. (*See* Compl. at 7–8; *Evans*, 80 F.3d at 962.)

Second, no reasonable jury could find that Murphy's placement on special watch violated his Fourteenth Amendment rights. Defendants have produced substantial evidence that Murphy was put on special watch due to his serious charges and high bail amount. (Stultz Aff. ¶ 3; *see also* Ex. A to Stultz Aff. at 62, 66, 76, and 79–80 (showing that medical authorities recommended Murphy remain on special watch due to his charges and bail amount).) Serious charges and a high bail amount have a rational relationship with suicide risk, and placing a prisoner on special watch is both a rational and nonpunitive way to mitigate that risk. *See Short*, 87 F.4th at 608–09 (finding the Fourteenth Amendment requires government action toward pretrial detainees to be rationally related to a legitimate, nonpunitive governmental purpose). Moreover, the Fourteenth Amendment requires jails to mitigate suicide risk. *See Doe v. DeWees*, No. CV TDC-18-2014, 2020 WL 1331902, at *14 (D. Md. Mar. 23, 2020) ("Due Process Clause imposes an affirmative obligation on the state to prevent detainees from committing suicide while held in a pretrial detention."), *clarified on denial of reconsideration*, No. CV TDC-18-2014, 2020 WL 13902279 (D. Md. June 2, 2020). Accordingly, there exists no genuine issue

---

only to meet an objective standard—not a subjective one—when the claimant was a pretrial detainee and therefore protected by the Fourteenth Amendment. *See Short*, 87 F.4th at 604–12.

of material fact over whether Murphy's placement on special watch was an unconstitutional punishment.

Third, no reasonable jury could find that Murphy's due process rights were violated by placement in solitary confinement. Although solitary confinement can be a constitutional violation, *see Tate v. Parks*, 791 F. App'x 387, 390 (4th Cir. 2019), Lt. Stultz's affidavit indicates that Murphy was not in solitary confinement (Stultz Aff. ¶ 9), and Murphy has not responded with contrary evidence.

Fourth, no reasonable jury could find a Fourteenth Amendment violation based on Murphy's allegations that he was denied eating utensils. Defendants' evidence, to which Murphy has not responded, indicates that the lack of eating utensils was not a punishment but a general policy of RCDC. (*See* Stultz Aff. ¶ 9.) That policy is rationally related to the legitimate and nonpunitive government interest of keeping the jail safe because "virtually any item possessed can be fashioned into a weapon." *See Hosna v. Groose*, 80 F.3d 298, 302 (8th Cir. 1996) (finding that denying inmates various objects was "rationally related to [the] legitimate penological interes[t]" of inmate and officer safety).

Fifth, no reasonable jury could find a Fourteenth Amendment violation based on Murphy's allegations that he was denied grievance forms. "It is well-settled that prison inmates, including pre-trial detainees, have no federal constitutional right to have any inmate grievance system in operation at the place where they are incarcerated." *Lewallen v. Mitchell*, No. CV 9:20-3817-SAL-MHC, 2021 WL 5813119, at *5 (D.S.C. Oct. 19, 2021), *report and recommendation adopted*, No. 9:20-CV-03817-SAL, 2021 WL 5810512 (D.S.C. Dec. 7, 2021); *accord. Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017). Additionally, Murphy did

11

not respond to Defendants' evidence that he had access to alternative grievance procedures but did not use them.  (*See* Stultz Aff. ¶ 11.)

Sixth and finally, no reasonable jury could find unconstitutional punishment based on Murphy's allegations that he was verbally harassed.  Even if Murphy had produced strong evidence of verbal harassment, it would not constitute a constitutional violation.  *See Harris v. Green*, No. DKC-12-434, 2013 WL 718868, at *4 (D. Md. Feb. 26, 2013).

For the above reasons, there is no genuine issue of material fact as to whether Defendants violated Murphy's due process rights under the Fourteenth Amendment.  The Court should therefore grant Defendants' Motion for Summary Judgment with respect to Murphy's Fourteenth Amendment claims.

### B.  First Amendment Claim

The undersigned next concludes that Murphy has not created a genuine issue of material fact as to whether RCDC staff violated his First Amendment rights by retaliating against his attempts to file a grievance.  First, Murphy has not responded to Defendants' evidence that he had access to grievance procedures and did not use them.  Second, Murphy has not shown a causal relationship between his protected First Amendment activity and Defendants' actions.

The "right to file a prison grievance free from retaliation [is] clearly established under the First Amendment."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).  This does not mean that detainees have a right to file grievances; it only means that when they do, retaliation violates the First Amendment.  *See id.* at 542 ("The Eighth Circuit is not alone in finding that although inmates do not have a constitutional entitlement to and/or due process

12

interest in accessing a grievance procedure, they have a First Amendment right to be free from retaliation when they do file. . . . Like our sister circuits, we see no inconsistency between these distinct legal principles."). "To succeed on a First Amendment retaliation claim, a plaintiff must establish that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Rader v. Bailey*, No. 120CV1423PTGIDD, 2024 WL 844855, at *6 (E.D. Va. Feb. 27, 2024) (citing *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020)).

Here, Murphy has not produced sufficient evidence to create a genuine issue of material fact as to the second and third elements of a retaliation claim. Regarding the second element, Murphy has not responded to Defendants' claim that he had access to alternative grievance procedures that he failed to use. (Stultz Aff. ¶ 11.) Murphy therefore has not produced sufficient evidence to allow a jury to find Defendants adversely affected Murphy's protected First Amendment activity.

Regarding the third element, Defendants have produced evidence that most of the harms described in the Complaint either did not occur (i.e., denial of medical care and solitary confinement) or stemmed from general RCDC policies and were not targeted at Murphy (i.e., placement on special watch, denial of grievance forms, and denial of utensils). (Stultz Aff. ¶¶ 3–11.) Again, Murphy has not responded to that evidence. Murphy has therefore produced

insufficient evidence to establish a causal relationship between his attempts to file a grievance and the aforementioned harms.

For the above reasons, the Court should grant Defendants' Motion for Summary Judgment with respect to Murphy's First Amendment claim.

### C. False Imprisonment

Murphy claims that Defendants committed false imprisonment, presumably by putting him on special watch. (*See* Compl. at 9.) The undersigned disagrees.

"To state a claim of false imprisonment in North Carolina, a plaintiff must allege: '(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force . . . (3) against the plaintiff's will.'" *Alejandra Batlle v. United Drug Supply, Inc.*, No. 1:20CV412, 2020 WL 9848460, at *5 (M.D.N.C. Dec. 2, 2020), *report and recommendation adopted as modified sub nom. Batlle v. United Drug Supply, Inc.*, No. 1:20CV412, 2021 WL 7709972 (M.D.N.C. Sept. 20, 2021). However, it is legal to restrain pretrial detainees for security reasons. *Hunter v. Kimbrough*, No. 1:21CV00695, 2024 WL 3342418, at *4 (M.D.N.C. May 13, 2024). Moreover, the "Due Process Clause imposes an affirmative obligation on the state to prevent detainees from committing suicide while held in a pretrial detention." *Doe v. DeWees*, No. CV TDC-18-2014, 2020 WL 1331902, at *14 (D. Md. Mar. 23, 2020), *clarified on denial of reconsideration*, No. CV TDC-18-2014, 2020 WL 13902279 (D. Md. June 2, 2020).

Here, there is no genuine issue of material fact as to the first element of false imprisonment—illegal restraint—because the record shows that Murphy's placement on special watch was legal. Defendants have filed substantial evidence that Murphy was placed on special watch due to suicide risk from his serious charges and high bond amount. (*See*

14

Stultz Aff. ¶ 3; *see also* Ex. A to Stultz Aff. at 62, 66, 76, 79–80.) Murphy has not responded to that evidence. For this reason, no reasonable jury could find that Defendants committed false imprisonment by placing Murphy on special watch. The Court should therefore grant Defendants' Motion for Summary Judgment with respect to Murphy's false imprisonment claim.

### D. Intentional Infliction of Emotional Distress

Murphy also claims that Defendants committed Intentional Infliction of Emotional Distress (IIED). (Compl. at 3.) This claim should fail because Murphy does not allege or provide any evidence of sufficiently severe emotional distress.

Under North Carolina tort law, IIED involves three elements: (1) "extreme and outrageous conduct by the defendant," (2) "which is intended to and does in fact cause" (3) "severe emotional distress." *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 611 (M.D.N.C. 2019). "Severe emotional distress means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.* at 611–12 (citation modified). "While proof of severe emotional distress does not necessarily require medical evidence or testimony, there must be real evidence of severe emotional distress." *Maisha v. Univ. of N. Carolina*, No. 1:12-CV-371, 2015 WL 277747, at *8 (M.D.N.C. Jan. 22, 2015) (citation modified), *aff'd,* 641 F. App'x 246 (4th Cir. 2016).

No reasonable jury could find for Murphy on this issue because Murphy has produced no evidence that he ever suffered from a "severe and disabling emotional or mental condition

15

. . . generally recognized and diagnosed by professionals." *See id.* The closest Murphy comes is alleging that Defendants caused him "pain, suffering, physical injury, and emotional distress" (Compl. at 10), which falls short of the level of evidence required for this claim. The Court should therefore grant the Defendants' Motion for Summary Judgment with respect to Murphy's IIED claim.

### E. *Monell*

Defendants argue that Murphy's claims against them in their official capacities do not satisfy the requirements of *Monell v. Department of Social Services*. (*See* Docket Entry 29 at 10.) The undersigned agrees. *Monell* provides an additional reason why Murphy's claims against Defendants in their official capacities should be dismissed.

"[O]fficial capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent[.]" *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *accord. Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 287 n.5 (4th Cir. 2021). If that entity is a municipality, *Monell* forbids courts from holding it liable for the independent acts of its employees under § 1983. *See* 436 U.S. 658, 691 (1978). A municipality is liable for its employees' acts only if it "follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014).

Here, Murphy cannot satisfy *Monell* because he has produced insufficient evidence to support a single constitutional violation, let alone a custom, policy, or practice of violations. Murphy has sued the sheriff of Rockingham County and multiple detention officers at RCDC

16

in their official capacities for violating his constitutional rights. (Compl. at 2–4, 6.) All of these defendants are agents of Rockingham County. *See Harter v. Vernon*, 101 F.3d 334, 338-43 (4th Cir. 1996) (finding North Carolina sheriffs are agents of their county); *Dean v. Campbell*, No. 5:22-CV-167-KDB-DCK, 2023 WL 5281945, at *4 (W.D.N.C. July 14, 2023) ("North Carolina places care and custody of the county jail in the sheriff's office's control." (quotation modified) (citing N.C. Gen. Stat. § 162-22)), *report and recommendation adopted*, No. 522CV00167KDBDCK, 2023 WL 5281514 (W.D.N.C. Aug. 16, 2023). Murphy's official capacity claims must therefore satisfy *Monell* by showing a custom, policy, or practice of rights violations in Rockingham County. But as previously explained, Murphy has failed to produce sufficient evidence for even a single rights violation; he therefore cannot meet *Monell*'s more stringent requirement of showing a custom, policy, or practice of violations. For these reasons, Murphy's claims against Defendants in their official capacities should be dismissed.

### F. Qualified Immunity

Defendants assert qualified immunity from Murphy's claims against them in their individual capacities. (*See* Docket Entry 17 at 5; Docket Entry 29 at 6–7.) The undersigned agrees. Qualified immunity provides an additional reason why Murphy's claims against Defendants in their individual capacities should be dismissed.

"The affirmative defense of qualified immunity protects law enforcement officers against lawsuits seeking money damages from them in their individual capacity." *Bostic v. Rodriguez*, 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009). Deciding whether qualified immunity bars a claim requires a court to determine: "(1) whether the official violated a constitutional

17

right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

As previously explained, Murphy has not shown that any of his rights were violated. He therefore cannot meet the first element required to avoid qualified immunity. Thus, Murphy's claims against Defendants in their individual capacities should be dismissed.

### III. MOTION TO SEAL

To support their summary judgment motion, Defendants filed copies of Murphy's confidential medical records as exhibits attached to Lt. Stultz's affidavit. (*See* Ex. A and B to Stultz Aff., Docket Entry 32-1.) Defendants then moved to seal those filings. (Docket Entry 30.) The Court grants Defendants' Motion to Seal with respect to Murphy's medical records, Exhibits A and B to Lt. Stultz's affidavit, but denies the motion as to Lt. Stultz's affidavit itself, which is already publicly available given Defendants earlier filed it without redactions (*see* Docket Entry 29-1 at 2–5).

Because Murphy's medical records were submitted in connection with a motion for summary judgment, the documents are judicial records to which the public has a right of access protected by the First Amendment. *See Doe v. Pub. Citizen*, 749 F.3d 246, 267–68 (4th Cir. 2014). Sealing them is proper only if a compelling government interest is shown, and the sealing is narrowly tailored to meet that compelling interest. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). In considering the issue, the Court must

> weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

18

*Va. Dept. of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). This Court is more likely to grant a motion to seal medical records when the records contain a wide breadth of confidential information than when the records are limited and entirely relevant to the case. *Compare Fulp v. Columbiana Hi Tech, LLC*, No. 1:16CV1169, 2018 WL 1027159, at *10 (M.D.N.C. Feb. 21, 2018) *with Musgrove v. Moore*, No. 1:19-CV-164, 2022 WL 19977408, at *2 (M.D.N.C. Apr. 20, 2022).

Here, the Court finds that sealing Murphy's medical records serves the compelling government interest of protecting the confidentiality of Murphy's medical information and is narrowly tailored to achieve that purpose. Defendants filed nearly 100 pages of medical records containing a wide breadth of confidential medical information, much of which is not particularly relevant to this case. The relevant information is only that which confirms Lt. Stultz's already-public statements that Murphy received medical services and was placed on special watch due to his serious charges and high bail amount. (*See* Ex. A to Stultz. Aff. at 62, 66, 76, 79–80.) But that relevant information is intermixed with, and therefore not easily separable from, the less-relevant confidential medical information. Moreover, although Defendants' Motion to Seal has been pending for nearly seven months, no member of the public has challenged it. (*See* Docket Entry 30.)

For the above reasons, the Court grants Defendants' Motion to Seal with respect to Exhibits A and B to Lt. Stultz's affidavit but denies the Motion to Seal with respect to the affidavit itself.

19

## IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Seal (Docket Entry 30) be **GRANTED IN PART AND DENIED IN PART**, and that Docket Entry 32-1, containing Exhibits A and B to Lt. Stultz's affidavit in support of Defendants' Motion for Summary Judgment, remain sealed.[10] Furthermore, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 28) be **GRANTED**, and this action be dismissed with prejudice.

                                              /s/ Joe L. Webster
                                              United States Magistrate Judge

November 7, 2025
Durham, North Carolina

---

[10] The Motion to Seal is denied as to Lt. Stultz's affidavit, which is already publicly available at Docket Entry 29-1 at 2–5.